James W. RALPH, Plaintiff,

v.

HARRY 'ZUBIK COMPANY, Inc.,
Defendant.

Civ. A. No. 60-674.

United States District Court
W. D. Pennsylvania.

Jan. 10, 1963.

Lloyd F. Engle, Jr., Wilner, Wilner &
Kuhn, Pittsburgh, Pa., for plaintiff.

Martin Geary, Pittsburgh, Pa., for de-
fendant.

ROSENBERG, District Judge.

The plaintiff seaman brought an action
under the Jones Act and separate action
in admiralty for maintenance and cure.
The action under the Jones Act was tried
to a jury and it rendered a verdict
against the defendant and in favor of the
plaintiff for the sum of $22,000.00. The
defendant filed a motion for a new trial
and a motion to have the judgment and
verdict set aside and judgment entered
in accordance with defendant's motion
for a directed verdict.

To support the motion for a new trial,
the defendant filed 21 reasons, and in
support of the motion to have the ver-
dict and judgment set aside and judg-
ment entered in accordance with the de-

fendant's motion for a directed verdict, there were four reasons subscribed. Most of the reasons are re-statements of the same arguments and are summarized as follows:

1. The jury should have been permitted a view of the M/V Prosperity upon which boat the plaintiff was injured and for which the plaintiff made claim for damages, or in lieu of a view by the jury that the capstan, about which the involved cable had been attached, should have been permitted to be brought into court as evidence.

2. The defendant was deprived of his right to produce impeaching witnesses.

3. The jury was not given information or instruction in regards to the plea of surprise by the plaintiff as it related to one of his witnesses, and the weight which the jury might give such a witness's testimony where a surprise had been pleaded.

4. The jury was given erroneous instructions so as to permit them to speculate on the facts and damages. The jury was given a mis-statement of facts, which the Court refused to correct when called to its attention.

The plaintiff seaman was employed by Harry Zubik Company Inc., on the M/V Prosperity as a deckhand. The vessel, itself, was leased by the defendant from Harry Zubik, individually. On September 17th, 1960, the plaintiff was securing a slack line on a capstan in the process of facing up a tow of barges, or in other words was facing the boat up to a barge. In the course of this process, and while the boat was standing still, the plaintiff was winding up the slack rope when the captain of the boat, as its pilot, permitted the boat to back or drift back, or as it was stated in the evidence, the captain "kicked back" on the boat. During this time, the handle of the capstan with which the plaintiff had been working and which is about two inches high and four feet long with an elbow on the end and which end of the handle stuck out of the cap-

stan, jerked back as the boat backed up, and hit the plaintiff on the arm. At the time of the blow, the plaintiff observed a numbness—a shock and received a gash about one inch long on his arm. The plaintiff reported immediately afterwards to Captain Grimm of the injury to his arm, and several days later to Harry Zubik.

The plaintiff was admitted to the Public Health Service in Pittsburgh ten or twelve days after the accident in question, and to the Marine Hospital at Staten Island, New York in November, 1960, for a period of approximately two weeks. He was seen by Dr. M. S. DeRoy on May 24, 1962 and on June 18, 1962. Dr. DeRoy testified as a medical witness in favor of the plaintiff at the trial of this case. He testified that the plaintiff had suffered a partial disability because of an injury to the ulnar nerve; that this was due to the fact that the plaintiff had suffered a blow, contusion or concussion of this nerve, which brought about a thickening area over this nerve indicating a reaction of fibrous tissue found where the injury to the nerve occurred. He corroborated the complaint of the plaintiff that there was a loss of strength in the right arm and hand and that the right hand lacked the power of gripping. He gave it as his opinion that the plaintiff could do any type of work which would not necessitate a strong hold with the right hand. The doctor testified that this plaintiff could undergo an operation without any certainty of a remedy to the injured nerve. The doctor corroborated the plaintiff in all other respects as to the evidence of partial disability.

■■ The first contention of the defendant, that the jury should have been brought onto the M/V Prosperity and allowed a view or in the alternative that the capstan should permissibly have been brought into court and introduced into evidence may be dissipated in view of the fact that the jury specifically wrote out a finding that there was no showing of unseaworthiness of the Prosperity.[1] It

1. "And now, to-wit: June 20, 1962, we, the jurors empaneled in the above en-

titled case, find the tow boat Prospirity owned by the Harry Zubik Co., Inc. sea-

was too late for the defendant at the trial of the case to assume a disadvantage over the plaintiff when it was informed in the plaintiff's pretrial statement on July 13, 1960 of the circumstances of the accident as claimed by the plaintiff, and that the capstan had been involved and that the cogs had slipped. The defendant did not in its pretrial statement or stipulation or at the pretrial conference indicate any desire or need for such a view, and to require this to be done two years after the occurrence of the incident, without giving the plaintiff an opportunity to appraise this situation, was an imposition of surprise upon the plaintiff which could in all fairness not have been allowed without a continuance. It was accordingly disallowed.

█ Defendant's second contention is equally without merit, that he should have been allowed to produce impeachment testimony in regards to the non-occurrence of the accident on the theory that the plaintiff had left defendant's employ because he wanted to secure employment with the Merchant Marine. This matter was within the knowledge of the defendant August 3, 1961 when it filed its pretrial statement.[2]

Our Pretrial Procedure Rule 5, II, G, provides as follows:

> "Failure to make a full disclosure of evidence during the pretrial conference will result in exclusion of that evidence at that trial. The only exception will be * * * (2) impeaching matters * * *. Insofar as impeaching * * * matter is known at the time of the pre-trial, it must be disclosed to the Court alone, for determination by the Court as to the requirement of disclosure."

Accordingly, since the defendant knew when it filed its pretrial statement, that this evidence might be in order either as defense or impeachment matter, it was its duty to disclose the names of these witnesses with its other witnesses at or before the pretrial, or alternatively to inform the Court of possible impeachment evidence. While the defendant listed its witnesses at or before pretrial proceedings, nowhere and at no time did it list the names or indicate that there were other witnesses or impeachment evidence. The defendant cannot assert that he did not know until the time of trial what his main defense was, i. e. that the plaintiff was quitting to go to work for the Merchant Marine and not because he was injured, and that, therefore, it could not produce witnesses to sustain its own defense until it was actually brought out in the plaintiff's case by defendant's cross-examination, and that the matter which was originally the defense, then became a matter of impeachment for which special witnesses were needed. Because these witnesses were held back by the defendant as it appeared at the time of trial for advantage purposes, it was properly disallowed. There is no reason why procedural rules should not be respected, and this Court will require compliance therewith as justice requires.

█ As for the defendant's third contention, that the jury was not given proper instructions regarding the plea of surprise raised by the plaintiff with his witness, Wissenbach, it is amply indicated that the jury was left in no doubt, at the time, of the meaning of the circumstances by which a witness called by the plaintiff had surprised the plaintiff's counsel and that the court permitted his cross-examination. This was done openly before the jury and the jury could not have failed to understand its significance. This Court further gave full and explicit instructions on credibility of witnesses generally and on the right of the jury to believe or disbelieve in whole or in part as to what seemed probable and right.

worthy, however, we find neglect on the part of the pilot who was operating the vessel. We are in agreement in favor of the plaintiff James W. Ralph and that he should be awarded the sum of Twenty two thousand dollars $22,000.00."

2. "The plaintiff herein told the defendant that he was leaving defendant's employ in order to secure employment with the Merchant Marine."

 The fourth contention is equally without merit. Because the Court's summation of the plaintiff's case was longer than that of the defendant's case, defendant's counsel attributed prejudice and unfairness by the Court. The plaintiff's evidence was longer and required more discussion. The defendant's was simply a denial. In any event the jury was instructed to rely upon its own recollection and ignore the comments of the Court if it believed the Court's recital to be in any part erroneous. The defendant received equally impartial treatment with the plaintiff and it has no cause to complain.

Both sides had equal opportunities in this case, and at pretrial, both sides were satisfied on what each would be required to produce or face at the trial of the case, as at pretrial, the Court informed the parties.

"THE COURT: Counsel understand that they will be limited at the trial of the case to the issues raised and the disclosures made in the proceedings to date?

"MR. ENGLE: That is right.

"MR. GEARY: Yes."

Defendant's motion will be denied.

The defendant also objected to the jury's award in its verdict as being excessive. There was ample evidence for the jury to arrive at the award of $22,000.00. It could have taken into consideration the evidence for the years after the plaintiff received his injury and partial incapacity that his earnings were reduced by approximately $3500.00. It could have taken into consideration the evidence that the plaintiff was not able to do any heavy manual work on vessels, the only work he knew. It could have taken into consideration the evidence that the plaintiff had lost the full use of his right arm. It could have considered that the plaintiff could undergo an operation which would cost approximately $500.00 without any guarantee of a remedy. And it could have considered that the plaintiff at the time of his injury was thirty-seven years of age. These, at least, the jury could have considered and this was substantial evidence for its finding. It is not a question of what I or Counsel, or any other person may have believed what this plaintiff was entitled to as compensatory damages. It is possible that others would have awarded a higher or lower amount, but the discretion in this particular case was vested in the jury, and there is no reason why its decision should be disturbed.